IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
*Plaintiff,*

v.

EDUARDO APONTE-TORRES,
a.k.a. "Edu", "Menor", and "Bubu"
*Defendant.*

CRIMINAL NO. 22-510 (ADC)
24-188 (GMM)

## PLEA AND FORFEITURE AGREEMENT
### Pursuant to Fed. R. Crim. P. 11(c)(1)(B)

TO THE HONORABLE COURT:

The United States of America, Defendant, Eduardo Aponte-Torres, and Defendant's counsel, Melanie Carrillo, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

   Defendant agrees to plead guilty to:

   (1) Count One and Count Seven of the Indictment in Criminal Case No. 24-cr-188 (GMM); and

   (2) Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC).

   As charged, Count One and Count Seven of the Indictment in Criminal Case No. 24-cr-188 (GMM) provides:

*U.S v. [7] EDUARDO APONTE-TORRES,* 22-510 (ADC); *U.S. v. [13] EDUARDO APONTE-TORRES,* 24-188 (GMM))

Count One: From at least on or about the year 2016 and continuing up to and until the return of the instant Indictment, in the Municipality of Ponce, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, and other defendants herein, did knowingly and intentionally, combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and intentionally distribute and possess with intent to distribute controlled substances, to wit:  one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance; five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II Narcotic Drug Controlled Substance; five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II, Narcotic Drug Controlled Substance; one hundred (100) kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I, Controlled Substance; 400 grams or more of N-phenyl-N[1-(2-phenylethyl) -4-piperidinyl] propenamide (fentanyl) a Schedule II Narcotic Drug Controlled Substance; within one thousand (1,000) feet of a real property comprising the Arístides Chavier Arévalo Public Housing Project, the Ernesto Ramos Antonini Public Housing Project, the Dr. Manuel de la Pila Public Housing Project, the Ponce Housing Project and Hogares de Portugues Public Housing Project, all public housing facilities owned by a public housing authority, and other areas in and nearby the municipality of Ponce, Puerto Rico.  All in violation of Title 21 U.S.C. §§ 841(a)(1)

*U.S v. [7] EDUARDO APONTE-TORRES, 22-510 (ADC); U.S. v. [13] EDUARDO APONTE-TORRES, 24-188 (GMM))*

& (b)(1)(A), 846 and 860.

Count Seven: From at least on or about the year 2016 and continuing up to and until the return of the instant Indictment, in the Municipality of Ponce,in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, and others, did knowingly and unlawfully possess firearms, of unknown make and caliber, as that term is defined in Title 18 U.S.C.§ 921(a)(3), in furtherance of a drug trafficking crime for which they may be prosecuted in a Court of the United States, that is conspiracy to possess with the intent to distribute controlled substances and possession with intent to distribute controlled substances, as charged in Counts One through Five of the instant Indictment. All in violation of Title 18 U.S.C. §924(c)(1)(A).

As charged, Count One of the Superseding Indictment in Criminal Case No. 22-cr-510 (ADC) provides:

Count One: Beginning on a date unknown, but not later than November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed together with others known and unknown to the Grand Jury, to import into the United States from any place outside thereof, including the Country of the Dominican Republic, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug-Controlled Substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(B)(ii), and

963.

However, Defendant agrees to plead guilty to the lesser included offense in Count One of the Indictment, that is,

Beginning on a date unknown, but not later than November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed together with others known and unknown to the Grand Jury, to import into the United States from any place outside thereof, including the Country of the Dominican Republic, 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug-Controlled Substance. All in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(2)(B)(ii) and 963.

### 2. Stipulation as to Controlled Substances

The United States of America and the Defendant stipulate for the purposes of this Plea Agreement that the Defendant shall be accountable for the conspiracy to distribute and to import at least two kilograms but less than three and half kilograms of cocaine. The Defendant acknowledges that the defendant understands that the Court is not required to accept the parties' stipulation regarding the applicable drug weight.

### 3. Maximum Penalties

**Criminal Case No. 24-cr-188 (GMM)**

Count One: The statutory penalty for the offense charged in Count One of the Indictment, is a term of imprisonment which shall not be less than ten (10) years and up to life in prison; a fine not to exceed twenty million dollars ($20,000,000.00); and a term of supervised release of at least ten (10) years, in addition to any term of incarceration, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846 and 860.

However, based on the stipulated and agreed amount of narcotics possessed by the defendant, that is, at least 2 KG but less than 3.5 KG of Cocaine, the defendant faces a term of imprisonment which may not be less than 5 years and not more than eighty (80) years, a fine not to exceed ten million dollars ($10,000,000.00), and a term  of supervised release of at least eight (8) years in addition to any term of incarceration, pursuant to 21 U.S.C. §§ 841(b)(1)(B), 846 and 860.

Count Seven: The penalty for the offense charged in Count Seven of the Indictment is a consecutive term of imprisonment of not less than five (5) years and a maximum of life pursuant to 18 U.S.C. § 924(c)(1)(A)(i); a fine not to exceed two hundred and fifty thousand dollars ($250,000.00) pursuant to 18 U.S.C. § 3571(b)(3); and a supervised release term of not more than five (5) years, pursuant to 18 U.S.C. § 3583(b)(1).

**Criminal Case No. 22-cr-510 (ADC)**

Count One:

As charged, in regards to Count One, the penalty for the offense charged is a term of imprisonment which shall not be less than ten (10) years and up to life

imprisonment, a fine not to exceed ten million dollars ($10,000,000), and a term of supervised release of at least five (5) years in addition to any term of incarceration, pursuant to 21 U.S.C. §960(b)(1)(B)(ii).

However, for purposes of this plea agreement and based on Defendant's guilty plea to a lesser included drug offense, the penalty for the offense is a term of imprisonment which shall not be less than five (5) years or more than forty (40) years; a fine not to exceed five million dollars ($5,000,000); and a supervised release term of at least four (4) years, pursuant to 21 U.S.C. § 960(b)(2)(B)(ii).

### 4. Sentencing Guidelines Applicability

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. § § 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

### 5. Special Monetary Assessment

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

### 6.  Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

### 7. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.



### 8. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

*U.S v. [7] EDUARDO APONTE-TORRES, 22-510 (ADC); U.S. v. [13] EDUARDO APONTE-TORRES, 24-188 (GMM))*

| SENTENCING GUIDELINES CALCULATIONS<br>COUNT ONE1<br>21USC § 841(a)(1), (b)(1)(B) and § 846<br>(Conspiracy to Possess with Intent to Distribute Controlled Substances)<br>************************************************************************<br>COUNT ONE<br>21USC § 952(a) 960(a)(1), (b)(2)(B)(ii) and 963<br>(Conspiracy to Import Controlled Substances) | |
| --- | --- |
| Base Offense Level pursuant to U.S.S.G. § 2D1.1(c)(6)<br><br>(at least 2 kilograms but less than 3.5 kilograms of cocaine) | 28 |
| Defendant was a leader of criminal activity U.S.S.G. §<br><br>3B1.1(a) | +4 |
| Protected Location U.S.S.G. § 2D1.2(a)(1) | +2 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **31** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
| --- | --- | --- | --- | --- | --- |
| 108-135 | 121-151 | 135-168 | 153-188 | 168-210 | 188-235 |

| SENTENCING GUIDELINES CALCULATIONS<br>COUNT SEVEN<br>18 U.S.C. § 924(c)(1)(A) | |
| --- | --- |
| A minimum consecutive term of imprisonment of sixty<br><br>months is mandatory, with a maximum of life | **60 months**<br>**(to run consecutively to the**<br>**sentence imposed for Count**<br>**One outlined above)** |

---

1 <u>Groups of Closely Related Counts</u>.  § 3D1.2(d)("When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved…")

### 9. Sentence Recommendation

As to Count One of the Indictment in Criminal Case No. 24-cr-188 (GMM); and Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC), and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree to jointly recommend a sentence of 120 months of imprisonment, regardless of criminal history category. The parties acknowledge that Count One carries a mandatory minimum sentence of sixty (60) months of imprisonment. In both cases.

As to Count Seven of the Indictment in Criminal Case No. 24-cr-188 (GMM), the parties agree to jointly recommend a sentence of 60 months of imprisonment, which shall run consecutive to the sentence imposed in Count One of the Indictment in Criminal Case No. 24-cr-188 (GMM); and Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC), for a total sentence recommendation of 180 months of imprisonment.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

### 10. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant. However, the parties agree that criminal cases JSC2023G0134-37, JPD2024G0003

and JLA2024G0030 are relevant conduct to Count One of the Indictment in Criminal Case No. 24-cr-188 (GMM); and Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC) pursuant to U.S.S.G. §5G1.3 (b)(1) and §5K2.23; therefore, it should not count towards defendant's criminal history.   The parties further agree that the sentence received for any violation of probation in the above-referenced case number is not considered relevant conduct to the instant case for purposes of U.S.S.G. §§ 5G1.3 and 5K2.23.

## 11. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 180 months or less, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

## 12. No Further Adjustments or Departures

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 13.  Satisfaction with Counsel

Defendant is satisfied with counsel, Melanie Carrillo, Esq., and asserts that counsel has rendered effective legal assistance.

### 14. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

*U.S v. [7] EDUARDO APONTE-TORRES, 22-510 (ADC); U.S. v. [13] EDUARDO APONTE-TORRES, 24-188 (GMM))*

    e.  At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

## 15. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

## 16. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.



## 17. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

## 18. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

## 19. Dismissal of Remaining Counts

At sentencing should there be any pending counts, and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Indictment pending against Defendant in this case.

## 20. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

## 21. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

*U.S v. [7] EDUARDO APONTE-TORRES,* 22-510 (ADC); *U.S. v. [13] EDUARDO APONTE-TORRES,* 24-188 (GMM))

## 22. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

## 23. Forfeiture Provision

Pursuant to this Plea Agreement, the defendant agrees to forfeit to the United States any drug proceeds or substitute assets for that amount, which constitutes or is derived from proceeds generated or traceable to the drug trafficking offense in violation of 21 U.S.C. §§841, 846 and 860. Further, defendant shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations. The defendant agrees to identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past three years, or in which the defendant has or had during that time any financial interest. The defendant agrees to take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. Defendant agrees to forfeit to the United States all of the defendant's interests in any asset of a value of more than $1,000 that, within the last three years, the defendant owned, or in which

the defendant maintained an interest, the ownership of which the defendant fails to disclose to the United States in accordance with this agreement.

The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant further agrees to waive all statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

Defendant by agreeing to the forfeiture stated above, acknowledges that such forfeiture in not grossly disproportional to the gravity of the offense conduct to which

defendant is pleading guilty. Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

CONTINUE ON NEXT PAGE



*U.S v. [7] EDUARDO APONTE-TORRES, 22-510 (ADC); U.S. v. [13] EDUARDO APONTE-TORRES, 24-188 (GMM))*

The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

W. STEPHEN MULDROW
United States Attorney

Alberto Lopez-Rocafort
Assistant U.S. Attorney, Chief
Gang Section
Dated: 5/5/2025

María L. Montañez-Concepción
Assistant U.S. Attorney, Deputy Chief
Transnational Organized Crime Section
Dated: 5.7.2025

R. Vance Eaton
Assistant U.S. Attorney
Gang Section
Dated: 5/13/25

María Cristina Semanaz Ojeda
Assistant U.S. Attorney
Transnational Organized Crime Section
Dated: May 7, 2025

Ryan R. McCabe
Assistant U.S. Attorney
Transnational Organized Crime Section
Dated: May 7, 2025

Melanie Carrillo, Esq.
Counsel for Defendant
Dated: 08/08/2025

Eduardo Aponte-Torres
Defendant
Dated: 08/08/2025

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 08/08/2025

_____
EDUARDO APONTE-TORRES
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 08/08/2025

_____
Melanie Carrillo, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant Eduardo Aponte-Torres admits to being guilty as charged in the Indictment in Count One and Count Seven of the Indictment in Criminal Case No. 24-cr-188 (GMM); and Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC) and that the following is a true and accurate summary of the facts leading to the acceptance of responsibility:

### Criminal Case No. 24-cr-188 (GMM)



From at least or about the year 2016 and continuing up to and until the return of the instant Indictment, in the Municipality of Ponce, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, did knowingly and intentionally, combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and intentionally distribute and possess with intent to distribute controlled substances, to wit:   one (1) kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance; five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine base (crack), a Schedule II Narcotic Drug Controlled Substance; five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II, Narcotic Drug Controlled Substance; one hundred (100) kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I, Controlled Substance; 400 grams or more of N-

phenyl-N[1-(2-phenylethyl) -4-piperidinyl] propenamide (fentanyl) a Schedule II Narcotic Drug Controlled Substance; within one thousand (1,000) feet of a real property comprising the Arístides Chavier Arévalo Public Housing Project, the Ernesto Ramos Antonini Public Housing Project, the Dr. Manuel de la Pila Public Housing Project, the Ponce Housing Project and Hogares de Portugues Public Housing Project, all public housing facilities owned by a public housing authority, and other areas in and nearby the municipality of Ponce, Puerto Rico. All in violation of Title 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846 and 860.

The object of the conspiracy was the large-scale distribution of controlled substances at the Arístides Chavier Arévalo Public Housing Project, the Ernesto Ramos Antonini Public Housing Project, the Dr. Manuel de la Pila Public Housing Project, the Ponce Housing Project and Hogares de Portugues Public Housing Project, and other areas in the Municipality of Ponce, Puerto Rico, all for significant financial gain and profit. Defendant Eduardo Aponte-Torres acted as a leader for the drug trafficking organization. As a leader, the defendant controlled and supervised the drug trafficking activities at the drug points within the public housing projects controlled by the drug trafficking organization.

While multiple kilograms of heroin, cocaine, cocaine base and marijuana, were distributed during the conspiracy, for the sole purpose of this plea agreement, the defendant acknowledges that during the span of the conspiracy he possessed with intent to distribute at least 2 KG but less than 3.5 KG of Cocaine.

Furthermore, from at least or about the year 2016 and continuing up to and until the return of the instant Indictment, in the Municipality of Ponce, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, the defendant Eduardo Aponte-Torres, and others, did knowingly and unlawfully possess firearms, of unknown make and caliber, as that term is defined in Title 18 U.S.C.§ 921(a)(3), in furtherance of a drug trafficking crime for which they may be prosecuted in a Court of the United States, that is conspiracy to possess with the intent to distribute controlled substances and possession with intent to distribute controlled substances, as charged in Counts One through Six of the Indictment in Criminal Case No. 24-cr-188 (GMM). All in violation of Title 18 U.S.C. §924(c)(1)(A).

**Criminal Case No. 22-cr-510 (ADC)**

Beginning on a date unknown, but not later than November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Eduardo Aponte-Torres, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed together with others known and unknown to the Grand Jury, to import into the United States from any place outside thereof, including the Country of the Dominican Republic, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug-Controlled Substance.   All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(B)(ii), and 963.

Specifically, on November 17, 2022, in the morning, approximately fourteen nautical miles southwest of Cabo Rojo, Puerto Rico, Customs and Border Protection

("CBP") Marine Interdiction agents interdicted a 1999 white and gray Boston Whaler, bearing registration number PR-4292AD ("Vessel-1") with two crew members aboard—the captain and a crewmember.[2]    At approximately 7:35 a.m., the crew made visual contact with Vessel-1 and a second vessel ("Vessel-2") that was approximately 0.5 miles to the right. The CBP crew approached Vessel-1 that had two fishing rods in the water and two individuals aboard. Vessel-1 was trolling at approximately 6 knots when the CBP vessel made contact with blue lights activated.

CBP Agent Santiago identified himself as law enforcement, communicated with the individuals of Vessel-1 in Spanish, and tied both vessels together. CBP Agent Santiago asked the two individuals of Vessel-1 who was the captain.    The captain who was behind the center console stated that he was the captain. The crewmember was standing behind the captain.    CBP Agent Santiago ordered them to walk to the front of the boat.

The crewmember complied and walked to the front of Vessel-1 while CBP Agent Santiago spoke with the captain who was standing at the center console helm. CBP Agent Santiago was standing at the center console helm of the CBP vessel while, CBP Agent Maceda was standing in front of CBP Agent Santiago at the center of the CBP vessel, and CBP Agent Lamphere was standing at the front of the CBP vessel nearest to the crewmember. The captain stated in sum and substance that the boat had originated from Puerto Rico and that they were fishing. Both individuals stated they

---

2 Vessel-1 is registered in Puerto Rico to Vasquez-Torres.

were from Puerto Rico. CBP Agent Santiago observed a fish on the deck and asked for consent to inspect Vessel-1. The captain gave verbal consent. CBP Agent Santiago then asked for the boat registration documents. The captain retrieved a plastic, hard sided case, and removed the documents, and handed them to CBP Agent Santiago. CBP Agent Santiago then observed a locked compartment on board Vessel-1 and asked the captain where the keys were. The Captain's demeanor changed and he produced a khaki Glock pistol. The Captain pointed the weapon at CBP Agent Maceda and began to fire. CBP Agent Maceda fell. CBP Agent Santiago did not know if the firearm came from the hard plastic container or the captain's waist as his view was partially obstructed by the seat behind the center console. During the shooting, the crewmember—at the front of Vessel-1—threw his hands in the air, stated he did not have a gun, and then laid down on the deck of the boat.



The captain then engaged CBP Agent Santiago with the pistol as the Captain moved to cover behind the center console. CBP Agent Santiago felt rounds pass by his head and then an impact to his face. CBP Agent Santiago fell near the CBP vessel's gunwale and made his way backward to retrieve a rifle that was stored on the CBP boat. The Captain then engaged CBP Agent Lamphere at the front of the boat. CBP Agent Santiago called for CBP Agent Lamphere to provide a magazine for the rifle and while CBP Agent Lamphere was walking towards CBP Agent Santiago, CBP Agent Santiago observed two apparent gunshot wounds to CBP Agent Lamphere, one in the head and one in the arm.

CBP Agent Santiago received the rifle magazine, loaded the rifle, and began to

engage the Captain as CBP Agent Santiago moved forward along the CBP vessel. The Captain continued to fire from a position of cover behind Vessel-1's center console helm. CBP Agent Santiago engaged the Captain with the rifle who then fell. CBP Agent Santiago observed CBP Agent Maceda lying still on the deck with a gunshot wound to his head.

CBP Agent Santiago ordered the crewmember to sit on the gunwale of Vessel-1 with his hands behind his back where he was handcuffed to Vessel-1. The crewmember complied. CBP Agent Santiago assisted CBP Agent Lamphere with emergency medical care while CBP Agent Maceda was unresponsive. CBP Agent Santiago then called for assistance and provided the location of their vessel, and condition of the agents on board. After approximately 20-25 minutes, back up arrived and the crewmember was taken into custody while all three injured CBP officer were given medical care—CBP Agent Maceda died as a result of his injuries. The Captain also died as a result of the shooting.



On November 17, 2022, members of law enforcement conducted a court-authorized search of Vessel-1 and recovered, twenty bales, each containing 30 brick shaped packages with an approximate weight of 600 kilograms. A field test of the contents of the brick-shaped packages revealed the presence of cocaine. Members of law enforcement also recovered: one Glock 19X pistol, 9mm caliber, bearing serial number PBBP846—with six rounds remaining; one black Motorola cellular telephone with a black case; one black Apple iPhone with black/gray case; and one black Samsung cellular telephone with a black case.

*November 17, 2022---Interdiction of Vessel-2*

Shortly thereafter, — CBP Maritime Patrol Aircraft observed a suspected narcotics transport vessel—a center console boat with dual outboard engines, bearing registration number 7816-AC –Vessel-2—approximately seventeen nautical miles from Cabo Rojo, Puerto Rico.  As Vessel-2 moved away from the area and toward Puerto Rico—the individuals began to feign fishing.

Based on Maritime Patrol Aircraft's observations, United States Coast Guard ("USCG") Cutter Tezanos launched a smaller vessel with a boarding team.  The CG-26249 was launched approximately 18 nautical miles north of the reported incident.



After transiting for approximately five minutes, the boarding team observed Vessel-2 and confirmed with USCG Cutter Tezanos.  Vessel-2 was on an easterly course, headed towards Puerto Rico, at a speed of approximately 14 to 20 knots. Vessel-2 had multiple fishing poles onboard, at least three of which had lines extending aft.  CG boarding team found this inconsistent with the speed that the vessel was navigating.  After navigating for about 25-30 minutes, the CG vessel caught to Vessel-2.  Once they were approximately 500 yards off the starboard quarter of Vessel-2, Officer Ramos energized the Law Enforcement lights and siren.

Once the boarding team came alongside Vessel-2—Vessel-2 stopped and became compliant. The boarding team directed the two individuals onboard to turn off the engines, place their hands on top of their heads, and move toward the forward part of Vessel-2. The two individuals were identified as the captain; and the mechanic. When asked, the captain stated that he had a pistol onboard the boat, which was

located under the seat in which he was sitting. The pistol was a 9mm Glock with a 15 round magazine that was loaded with 14 rounds. The Glock was located underneath the captain's seat, in a small, tan colored pelican brief case with approximately $2,500.

CG Boarding team members went over to Vessel-2 to detain the individuals for officer safety. Once onboard Vessel-2, USCG Officer Penuel made contact with the two individuals. USCG Officer Penuel first asked the captain if he was the Captain, he did not answer. USCG Officer Penuel then asked the mechanic the same question, and he did not answer. USCG Officer Penuel asked both individuals if they spoke English. The mechanic indicated that he did. USCG Officer Penuel asked both individuals who the owner of Vessel-2 was, USCG Officer Penuel observed a look of confusion on both individuals' faces. USCG Officer Penuel tasked Officer Thompson with making the weapon "safe", by downloading it and securing it. Shortly thereafter, CBP vessel MIKE 834 arrived on scene. While looking for Vessel-2's paperwork, Officer Thompson began conducting an Initial Safety Sweep of Vessel-2. While looking inside a cooler located immediately aft of the operator's seat, Officer Thompson identified a large package wrapped in burlap which appeared to be consistent with contraband. CBP Agents onboard MIKE 834 stated they were tasked with taking custody of Vessel-2 as evidence to the officer involved shooting.

CBP Marine Interdiction agents conducted a search of Vessel-2 and observed twenty bales, each containing 30 brick shaped packages with an approximate weight of 600 kilograms.  A field test of the contents of the brick-shaped packages revealed the presence of cocaine.  CBP Marine Interdiction agents also recovered a Glock 43X,

Type text here

9mm, serial BVDC668 from Vessel-2. Agents also recovered a blue fanny pack with one 9mm Glock magazines containing 10 rounds and one 9mm Glock magazine containing 17 rounds.

During the above-described events, Eduardo Aponte-Torres, was in Guanica, Puerto Rico, conducting counter-surveillance for Vessel-1 and Vessel-2, in order to notify coconspirators of law enforcement presence.

For the purposes of this plea, Defendant admits that he conspired to import at least 2 kilograms but less than 3.5 kilograms of cocaine into the United States, from places outside of the United States.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical, and documentary evidence, which would have proven, beyond a reasonable doubt, that defendant Eduardo Aponte-Torres is guilty as charged in Count One and Count Seven of the Indictment in Criminal Case No. 24-cr-188 (GMM); and Count One of Superseding Indictment in Criminal Case No. 22-cr-510 (ADC).

Discovery was timely made available to the defendant for his review.

Ryan R. McCabe
Assistant United States Attorney
Transnational Organized Crime
Dated: _____

R. Vance Eaton
Assistant United States Attorney
Gang Section
Dated: _____5/13/25_____

Melanie Carrillo, Esq.
Counsel for Defendant
Dated: 08/08/2025

Eduardo Aponte-Torres
Defendant
Dated: 08/08/25