## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] OSVALDO HERNANDEZ-CAMACHO,<br>Defendant. | CRIM NO. 22-510 (ADC) |

RECEIVED & FILED
CLERK'S OFFICE

SEP – 8 2025

US DISTRICT COURT
SAN JUAN, PR

## PLEA AND FORFEITURE AGREEMENT
## PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(B)

**TO THE HONORABLE COURT:**

The United States of America, the Defendant, Osvaldo Hernandez-Camacho, and the Defendant's counsel, Yuseph Lamboy-Lopez, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), state that they have reached a Plea Agreement, the terms, and conditions of which are as follows:

### 1. Charges to which the Defendant will Plead Guilty

The Defendant agrees to plead guilty to Count One and Count Ten of the Fourth Superseding Indictment. As charged, Count One of the Fourth Superseding Indictment Provides:

<u>Count One</u>:  Beginning on a date unknown, but not later than November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Osvaldo Hernandez-Camacho, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed together with others known and unknown to the Grand Jury, to import into the United

States from any place outside thereof, including the Country of the Dominican Republic, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug-Controlled Substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(B)(ii), and 963.

Count Ten: Beginning, on a date unknown but not later than, November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Osvaldo Hernandez-Camacho, the defendant herein, aiding and abetting each other, and others known and unknown to the grand jury, did knowingly possess one or more firearms, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, as charged in Counts One through Nine of this Superseding Indictment. All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

## 2. Stipulation as to the Amount of Narcotics

The United States of America and the Defendant stipulate for the purposes of this Plea Agreement that the Defendant shall be accountable for importing into the United States more than 1000 kilograms of cocaine. The Defendant acknowledges that the defendant understands that the Court is not required to accept the parties' stipulation regarding the applicable drug weight.

## 3. Maximum Penalties

Count One: The maximum statutory penalty for the offense charged in Count

One of the Fourth Superseding Indictment, is a term of imprisonment of at least ten (10) years, but not more than life; a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, United States Code, Section 3571(b) or ten million dollars ($10,000,000.00); and a supervised release term of at least five (5) years, all pursuant, to Title 21, United States Code, Section  960(b)(1)(B).

Count Ten: The maximum statutory penalty for the offense charged in Count Four of the Indictment, is a term of imprisonment of not less than five years and up to life in prison pursuant to Title 18, United States Code, Section 924(c)(1); a fine not to exceed two hundred and fifty thousand dollars pursuant to Title 18, United States Code, Section 3571(b)(3); and a supervised release term of not more than five years, pursuant to Title 18, United States Code, Section 3583(b)(1).

## 4. Sentencing Guidelines Applicability

The Defendant understands that the sentence will be imposed by the Court in accordance with Title 18, United States Code, Sections 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, the Defendant acknowledges that parole has been abolished, and that the imposition of the Defendant's sentence may not be suspended.

### 5. Special Monetary Assessment

The Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to Title 18, United States Code, Section 3013 (a)(2)(A).

### 6. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines order the Defendant to pay a fine. The Court may also impose restitution. The Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

### 7. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

### 8. Recommended Sentencing Guidelines Calculations

After due consideration of the relevant factors enumerated in Title 18, United States Code, Section 3553(a), the United States and the Defendant submit that the advisory Guidelines calculations listed below apply to the Defendant. However, the

Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

| SENTENCING GUIDELINES CALCULATIONS COUNT ONE 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii), 963 | |
|---|---|
| Base Offense Level—Offense Level for underlying crime § 2S1.1(a); A victim was killed under circumstances that would constitute murder under 18 U.S.C. 1111 § 2D1.1(d); | 43 |
| Manager of Supervisor of Criminal Activity of five or more § 3B.1(a)(2) | +3 |
| Assault of law enforcement officer § 3A1.2(c)(1) | +6 |
| Acceptance of Responsibility pursuant to U.S.S.G. §3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **(49) => 43** |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| Life | Life | Life | Life | Life | Life |

| SENTENCING GUIDELINES CALCULATIONS COUNT TEN 18 U.S.C. § 924(c)(1)(A) | |
|---|---|
| A minimum consecutive term of imprisonment of sixty months is mandatory, with a maximum of life | **60 months (to run consecutively to the sentence imposed for Count One outlined above)** |

## 9. Sentence Recommendation

As to Count One and after due consideration of the relevant factors enumerated in Title, 18 United States Code, Section 3553(a), the parties agree that the parties will

request a variant sentence of 240 months, regardless of the criminal history category determined by the Court.

As to Count Ten, and after due consideration of the relevant factors enumerated in Title, 18 United States Code, Section 3553(a), the parties agree that the parties will request a sentence of imprisonment of 60 months, regardless of the criminal history category determined by the Court, to be served consecutive to the term of imprisonment in Count One and any other sentence

For a Total Term of imprisonment of 300 Months

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

## 10. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for the Defendant.

## 11. Waiver of Appeal

The Defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is 300 months or less, the Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 12. No Further Adjustments or Departures

The United States and the Defendant agree that no further adjustments or departures to the Defendant's total adjusted base offense level and no variant sentence under Title 18, United States Code, Section 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by the Defendant. The parties agree that any request by the Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 13. Satisfaction with Counsel

The Defendant is satisfied with counsel, Yuseph Lamboy-Lopez, Esq., and asserts that counsel has rendered effective legal assistance.

### 14. Rights Surrendered by the Defendant Through Guilty Plea

The Defendant understands that by entering into this Plea Agreement, the Defendant surrenders and waives certain rights as detailed in this agreement. The Defendant understands that the rights of criminal defendants include the following:

a. If the Defendant had persisted in a plea of not guilty to the charges, the Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if the Defendant, the United States, and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. The Defendant and the Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory

challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, that it could not convict the Defendant unless, after hearing all the evidence, it was persuaded of the Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c.  If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the Defendant's guilt beyond a reasonable doubt.

d.  At a trial, the United States would be required to present its witnesses and other evidence against the Defendant. The Defendant would be able to confront those witnesses and the Defendant's attorney would be able to cross-examine them. In turn, the Defendant could present witnesses and other evidence on the Defendant's own behalf. If the witnesses for the Defendant would not appear voluntarily, the Defendant could require their attendance through the subpoena power of the Court.

e.  At a trial, the Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from the Defendant's refusal to testify. If the Defendant desired to do so, the Defendant could testify on the Defendant's own behalf.



### 15.  Stipulation of Facts

The accompanying Stipulation of Facts signed by the Defendant is hereby incorporated into this Plea Agreement. The Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. The Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 16. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and the Defendant. It does not bind any other federal district, state, or local authorities.

### 17. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, the Defendant, and the Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.



### 18. Amendments to Plea Agreement

No other promises, terms, or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 19. Dismissal of Remaining Counts

At sentencing should there be any pending counts, and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Fourth Superseding Indictment pending against the Defendant in this case.

## 20. Voluntariness of Plea Agreement

The Defendant acknowledges that no threats have been made against the Defendant and that the Defendant is pleading guilty freely and voluntarily because the Defendant is guilty.

## 21. Breach and Waiver

The Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, the Defendant: (a) fails to perform or to fulfill completely each and every one of the Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw the Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and the Defendant will not have the right to withdraw the guilty plea. Moreover, the Defendant agrees that if the Defendant is in breach of the Plea Agreement, the Defendant is deemed to have waived any objection to the reinstatement of any charges under the Fourth Superseding Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

## 22. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), the Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## 23. Felony Conviction

The Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

## 24. Forfeiture Provision

Defendant agrees to waive and forgo any interests or claims over any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the offenses charged in Count One, ~~Twelve and Thirteen~~ and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense. Defendant agrees to forfeit the aforementioned property under Title 21, United States Code, Section 853.

The Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, or federal. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise the Defendant of this, pursuant to Rule 11(b)(1)(J), at the time the Defendant's guilty plea is accepted.

The property to be forfeited includes, but is not limited to, a sum of money representing the amount of proceeds traceable to the commission of the offense alleged in the Fourth Superseding Indictment and the following specific property:

(a) One 1999 Boston Whaler vessel with two Suzuki 4 stroke DF-300AP engines, haul number BWCAJ434F399, Puerto Rico registration number PR-4292-AD;

(b) One 1999 Boston Whaler vessel with two Mercury Optimax 225 engines, haul number BWCAJ213G899, Puerto Rico registration number PR-7816-AC;

(c) one 1974 Uniflite 42' vessel, Puerto Rico registration number PR-1497-AA;

(d) Lot of land marked "A" in the area located at París Ward in the municipality of Lajas, Puerto Rico, with a superficial area of 1.0232 *cuerdas*, equivalent to 40 areas, 21 centares and 8673 milliares or 4021.8673 square meters. In boundaries by the NORTHWEST, in 5.44 meters, 49.06 meters and 51.26 meters, with the strip of public use that separates it from Road 306; by the SOUTH, in 85.48 meters with lands of Angel Pérez; and by the WEST, in 82.50 meters with the lot "B" that will be awarded to the heiress María Gladys Rivera Toro;

(e) Lot marked with the number 7B on the inscription survey located at Martín González Ward in the municipality of Carolina, Puerto Rico, with a surface area of 895.2092 square meters, equivalent to 0.2278 cuerdas. Its boundaries

are by the NORTH, in an alignment of 16.158 linear meters with the municipal Street Las Virtudes; on the EAST, in an alignment of 15.338 linear meters with lot number 1; on the WEST, in four alignments totaling 33.010 linear meters with the municipal Street El Amor; and by the SOUTH, in two alignments totaling 23.495 linear meters with a strip of land to be dedicated for public use. This lot is affected by an easement of 3.00 meters wide corresponding to existing rainwater pipe of 48 inches in diameter that runs from West to East, from the municipal Street El Amor;

(f) Lot marked with the number 7C on the inscription survey located at Martín González Ward in the municipality of Carolina, Puerto Rico, with a surface area of *803.3940* square meters, equivalent to 0.2044 *cuerdas*. Its boundaries are by the NORTH, in an alignment of 35.348 meters with lot number 1; on the SOUTH, in four alignments totaling 34.585 meters with a strip of land to be dedicated for public use; on the EAST, in an alignment of 15.125 meters with lot number 1; and on the WEST, in an alignment of 36.551 meters with lot number 7B;

(g) One 2022 white RAM 3500 Longhorn bearing Puerto Rico license plate number 1098499, with vin number Serial: 3C63R3NL0NG175009 with an attached boat trailer;

(h) One 2014 black Toyota Tundra, bearing Puerto Rico license number 1014106, with vin number 3C6UR5DL6NG213344 with an attached boat

trailer;

(i) 2009 Ford Econoline E350 Super Duty Van White, bearing Puerto Rico license plate number 1054130, with VIN number 1FTSE34P79DA02532;

(j) a 2007 white Dutchcraft Camp Trailer, bearing Vehicle Identification number 47CTD2K237M429890;

(k) 2015 white Jayco Inc. Trailer bearing Puerto Rico license plate number 180488A, Vehicle Identification number 1UJBJ0BN8F1TB0359;

(l) gray Toyota Tundra Bearing Puerto Rico License Plate Number 1081382

(m)   White and black framed Star Stream trailer;

The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

The Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which the Defendant is pleading guilty. The Defendant agrees that the forfeiture

provisions of this Plea Agreement are intended to and will survive the Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

The forfeitability of any particular property pursuant to this agreement shall be determined as if the Defendant had survived, and that determination shall be binding upon the Defendant's heirs, successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

W. Stephen Muldrow
United States Attorney

Myriam Y. Fernández-González
Assistant U.S. Attorney, Chief
Transnational Organized Crime Section
Dated:  9/11 2025

Yuseph Lamboy-Lopez, Esq.
Counsel for Defendant
Dated:  7/Sep/25

María L. Montañez-Concepción
Assistant U.S. Attorney, Deputy Chief
Transnational Organized Crime Section
Dated:  9-2-2025

Osvaldo Hernandez-Camacho
Defendant
Dated:  7/Sep/2025

Ryan R. McCabe
Assistant U.S. Attorney
Dated: September 1, 2025

María Cristina Semanaz Ojeda
Assistant U.S. Attorney
Dated: September 1, 2025

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: ___7/Sep/2025___                    _____
                                          Osvaldo Hernandez-Camacho
                                          Defendant

I am the attorney for the Defendant. I have fully explained the Defendant's rights to the Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to the Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with the Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, the Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

Date: ___7/Sep/25___                      _____
                                          Yuseph Lamboy-Lopez
                                          Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant—Osvaldo Hernandez-Camacho admits that the Defendant is guilty as charged in the Fourth Superseding Indictment and admits the following:

Beginning on a date unknown, but not later than November 2021, and continuing up to and until April 2023, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, Osvaldo Hernandez-Camacho, the defendant herein, knowingly and intentionally combined, conspired, confederated, and agreed together with others known and unknown to the Grand Jury, to import into the United States from any place outside thereof, including the Country of the Dominican Republic, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug-Controlled Substance. All in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(1)(B)(ii), and 963.

Specifically on October 15, 2022, Osvaldo Hernandez-Camacho conducted a sea transfer where he and others received approximately 700 kilograms of cocaine, which they subsequently imported into Puerto Rico.

Specifically, on November 17, 2022, in the morning, approximately fourteen nautical miles southwest of Cabo Rojo, Puerto Rico, Customs and Border Protection ("CBP") Marine Interdiction agents interdicted a 1999 white and gray Boston Whaler, bearing registration number PR-4292AD ("Vessel-1") with two crew members

aboard—the captain and a crewmember.[1]   At approximately 7:35 a.m., the crew made visual contact with Vessel-1 and a second vessel ("Vessel-2") that was approximately 0.5 miles to the right. The CBP crew approached Vessel-1 that had two fishing rods in the water and two individuals aboard. Vessel-1 was trolling at approximately 6 knots when the CBP vessel made contact with blue lights activated.

CBP Agent Santiago identified himself as law enforcement, communicated with the individuals of Vessel-1 in Spanish, and tied both vessels together. CBP Agent Santiago asked the two individuals of Vessel-1 who was the captain.   The captain who was behind the center console stated that he was the captain. The crewmember was standing behind the captain.   CBP Agent Santiago ordered them to walk to the front of the boat.

The crewmember complied and walked to the front of Vessel-1 while CBP Agent Santiago spoke with the captain who was standing at the center console helm. CBP Agent Santiago was standing at the center console helm of the CBP vessel while, CBP Agent Maceda was standing in front of CBP Agent Santiago at the center of the CBP vessel, and CBP Agent Lamphere was standing at the front of the CBP vessel nearest to the crewmember. The captain stated in sum and substance that the boat had originated from Puerto Rico and that they were fishing. Both individuals stated they were from Puerto Rico. CBP Agent Santiago observed a fish on the deck and asked for consent to inspect Vessel-1. The captain gave verbal consent. CBP Agent Santiago

---

[1] Vessel-1 is registered in Puerto Rico to The Captain.

then asked for the boat registration documents. The captain retrieved a plastic, hard sided case, and removed the documents, and handed them to CBP Agent Santiago. CBP Agent Santiago then observed a locked compartment on board Vessel-1 and asked the captain where the keys were. The captain' demeanor changed and he produced a khaki Glock pistol. The Captain pointed the weapon at CBP Agent Maceda and began to fire. CBP Agent Maceda fell. CBP Agent Santiago did not know if the firearm came from the hard plastic container or the captain' waist as his view was partially obstructed by the seat behind the center console. During the shooting, the crewmember—at the front of Vessel-1—threw his hands in the air, stated he did not have a gun, and then laid down on the deck of the boat.

The captain then engaged CBP Agent Santiago with the pistol as the Captain moved to cover behind the center console. CBP Agent Santiago felt rounds pass by his head and then an impact to his face. CBP Agent Santiago fell near the CBP vessel's gunwale and made his way backward to retrieve a rifle that was stored on the CBP boat. The Captain then engaged CBP Agent Lamphere at the front of the boat. CBP Agent Santiago called for CBP Agent Lamphere to provide a magazine for the rifle and while CBP Agent Lamphere was walking towards CBP Agent Santiago, CBP Agent Santiago observed two apparent gunshot wounds to CBP Agent Lamphere, one in the head and one in the arm.

CBP Agent Santiago received the rifle magazine, loaded the rifle, and began to engage the Captain as CBP Agent Santiago moved forward along the CBP vessel. The

Captain continued to fire from a position of cover behind Vessel-1's center console helm. CBP Agent Santiago engaged the Captain with the rifle who then fell. CBP Agent Santiago observed CBP Agent Maceda lying still on the deck with a gunshot wound to his head.

CBP Agent Santiago ordered the crewmember to sit on the gunwale of Vessel-1 with his hands behind his back where he was handcuffed to Vessel-1. The crewmember complied. CBP Agent Santiago assisted CBP Agent Lamphere with emergency medical care while CBP Agent Maceda was unresponsive. CBP Agent Santiago then called for assistance and provided the location of their vessel, and condition of the agents on board. After approximately 20-25 minutes, back up arrived and the crewmember was taken into custody while all three injured CBP officer were given medical care—CBP Agent Maceda died as a result of his injuries. The Captain also died as a result of the shooting.

On November 17, 2022, members of law enforcement conducted a court-authorized search of Vessel-1 and recovered, twenty bales, each containing 30 brick shaped packages with an approximate weight of 600 kilograms. A field test of the contents of the brick-shaped packages revealed the presence of cocaine. Members of law enforcement also recovered: one Glock 19X pistol, 9mm caliber, bearing serial number PBBP846—with six rounds remaining; one black Motorola cellular telephone with a black case; one black Apple iPhone with black/gray case; and one black Samsung cellular telephone with a black case.

*November 17, 2022---Interdiction of Vessel-2*

Shortly thereafter, — CBP Maritime Patrol Aircraft observed a suspected narcotics transport vessel—a center console boat with dual outboard engines, bearing registration number 7816-AC –Vessel-2—approximately seventeen nautical miles from Cabo Rojo, Puerto Rico. As Vessel-2 moved away from the area and toward Puerto Rico—the individuals began to feign fishing.

Based on Maritime Patrol Aircraft's observations, United States Coast Guard ("USCG") Cutter Tezanos launched a smaller vessel with a boarding team. The CG-26249 was launched approximately 18 nautical miles north of the reported incident.

After transiting for approximately five minutes, the boarding team observed Vessel-2 and confirmed with USCG Cutter Tezanos. Vessel-2 was on an easterly course, headed towards Puerto Rico, at a speed of approximately 14 to 20 knots. Vessel-2 had multiple fishing poles onboard, at least three of which had lines extending aft. CG boarding team found this inconsistent with the speed that the vessel was navigating. After navigating for about 25-30 minutes, the CG vessel caught to Vessel-2. Once they were approximately 500 yards off the starboard quarter of Vessel-2, Officer Ramos energized the Law Enforcement lights and siren.

Once the boarding team came alongside Vessel-2—Vessel-2 stopped and became compliant. The boarding team directed the two individuals onboard to turn off the engines, place their hands on top of their heads, and move toward the forward part of Vessel-2. The two individuals were identified as Osvaldo Hernandez-

Camacho—captain; and the mechanic—crewmember. When asked, Hernandez-Camacho stated that he had a pistol onboard the boat, which was located under the seat in which he was sitting. The pistol was a 9mm Glock with a 15 round magazine that was loaded with 14 rounds. The Glock was located underneath the captain's seat, in a small, tan colored pelican brief case with approximately $2,500.

CG Boarding team members went over to Vessel-2 to detain the individuals for officer safety. Once onboard Vessel-2, USCG Officer Penuel made contact with the two individuals. USCG Officer Penuel first asked Hernandez-Camacho if he was the Captain, he did not answer. USCG Officer Penuel then asked the mechanic the same question, and he did not answer. USCG Officer Penuel asked both individuals if they spoke English. The mechanic indicated that he did. USCG Officer Penuel asked both individuals who the owner of Vessel-2 was, USCG Officer Penuel observed a look of confusion on both individuals' faces. The mechanic stated that the owner's name was "Jose" and that he did not know his last name. USCG Officer Penuel tasked Officer Thompson with making the weapon "safe", by downloading it and securing it. Shortly thereafter, CBP vessel MIKE 834 arrived on scene. While looking for Vessel-2's paperwork, Officer Thompson began conducting an Initial Safety Sweep of Vessel-2. While looking inside a cooler located immediately aft of the operator's seat, Officer Thompson identified a large package wrapped in burlap which appeared to be consistent with contraband. CBP Agents onboard MIKE 834 stated they were tasked with taking custody of Vessel-2 as evidence to the officer involved shooting.

CBP Marine Interdiction agents conducted a search of Vessel-2 and observed twenty bales, each containing 30 brick shaped packages with an approximate weight of 600 kilograms. A field test of the contents of the brick-shaped packages revealed the presence of cocaine. CBP Marine Interdiction agents also recovered a Glock 43X, 9mm, serial BVDC668 from Vessel-2. Agents also recovered a blue fanny pack with one 9mm Glock magazines containing 10 rounds and one 9mm Glock magazine containing 17 rounds.

The Defendant further admits that he recruited the mechanic to the drug trafficking organization and directed his actions. The Defendant admits that he was a manager and organizer of criminal activity.

The Defendant admits that he conspired to import into the United States from a place outside thereof more than 1000 kilograms of cocaine. The Defendant further admits that the Defendant could have reasonably foreseen that murder might have been committed by his coconspirator the Captain.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt that Osvaldo Hernandez-Camacho is guilty as charged in Counts One and Ten of the Fourth Superseding Indictment. Discovery was timely made available to the Defendant for review.

Ryan K. McCabe
Assistant U.S. Attorney
Dated: _September 1, 2025_

Yuseph Lamboy-Lopez, Esq.
Counsel for Defendant
Dated: _7 Sep 25_

Osvaldo Hernandez-Camacho
Defendant
Dated: _7/Sep/2025_