## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**
Plaintiff,

v.

**EDGARDO LUIS MATOS-SANTOS**
Defendant.

Criminal No. 22-510-3 (ADC)

### DEFENDANT'S SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

HEREIN appears defendant Edgardo Luis Samtos-Matos ("Matos") through his court appointed counsel and most respectfully submits his sentencing memorandum to be considered at the sentencing hearing on December 18, 2025.

**Plea Agreement:**

Mr. Matos pleaded guilty to Counts 1 and 12 of the fourth superseding Indictment through a plea agreement in the instant case, which are:

**Count 1** - Conspiracy to import a controlled substance into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1). (b)(1)(B)(ii), and 963.

**Count 12** - murder of a federal law enforcement office in furtherance of Drug Trafficking; Aiding and Abetting, in violation of 21 U.S.C. §§ 848( e)(1)(A), (e)(1)(B), and 18 U.S.C. 2.

**Sentence Recommendation:**

As part of the plea agreement the parties stipulated the following sentencing recommendation:

> "*As to Counts One and Twelve, and after due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agreed they will request a variant sentence of imprisonment of three hundred (300) months, regardless of the criminal history category determined by the Court.*" *(*ECF 933, page 5, paragraph 9)

Mr. Matos respectfully and humbly requests that this Court adopt the parties' sentencing recommendation given the following sentencing factors submitted that will show the Court why Matos should be sentenced to **300 months** of imprisonment for both counts. As such, this Memorandum will be divided into the following parts: (a) brief case history; (b) the offense and Mr. Ramirez's background; (c) relevant legal principles regarding sentencing options; and (d) conclusion requesting the 300-month recommended sentence and other relief.

## A.  BRIEF CASE HISTORY

Mr. Matos was arrested by federal authorities on November 17, 2022 and on November 18, the initial appearance was held via VTC before the former U.S. Magistrate Judge Camille L. Vélez-Rivé (current U.S. District Judge) for the Initial Appearance. (ECF 3).  On December 1, 2022, the Arraignment/Detention Hearing was held, and the Court ordered the defendant remain detained. On August 27, 2024 a Fourth Superseding Indictment was filed at ECF 345 charging Mr. Matos with 12 counts.

On September 11, 2025 Mr. Matos pleaded guilty to Counts 1 and 12 of the fourth superseding Indictment through a plea agreement in the instant case and stipulated the following facts:

**Important facts to consider as 3553(a) factors from the "Stipulation of Facts" section in the Plea Agreement (ECF 933, pages 19-21).**

We provide the following excerpts from the stipulation of facts which describe some of the events occurred at the time when Custom Patrol agents interdicted the vessel where Mr. Matos and the deceased Joseamid Vazquez-Torres.

- The crewmember (Defendant Matos) was standing behind the captain (deceased Joseamid Vazquez-Torres) on board Vessel-1.  CBP Agent Santiago ordered them to walk to the front of the boat.  Matos complied and walked to the front of Vessel-1 while CBP Agent Santiago spoke with the captain who was standing at the center console helm.

- CBP Agent Santiago then observed a locked compartment on board Vessel-1 and asked the captain where the keys were.  The captain' (sic) demeanor changed and he produced a khaki Glock pistol,  pointed the weapon at CBP Agent Maceda and began to fire.  CBP Agent Maceda fell.

- During the shooting, Edgardo Luis Matos-Santos – at the front of Vessel-1, threw his hands in the air, stated he did not have a gun, and then laid down on the deck of the boat.

- CBP Agent Santiago ordered Matos to sit on the gunwale of Vessel-1 with his hands behind his back where he was handcuffed to Vessel-1.  Mr. Matos complied.

Another relevant fact to consider is that the discovery provided revealed that after the shooting and while fallen Agent Maceda was still with life, Mr. Matos told one of the officers that he knew first aid and offered to help the injured officer, but the officer did not allow him.  (FD-302, drafted on 11/21/2022 and prepared on 11/22/2022 by Jose Lugardo Dowling and Jestin A. Llewellyn).

### Victim Impact Statement Provided

The undersigned discussed the PSR with Mr. Matos, especially the **impact statement** submitted by deceased Agent Michael O. Maceda's brother.  Immediately, Mr. Matos' eyes became watery and became deeply emotionally sad because of the loss of the agent's life.  Matos expressed

"*This should have never happened; Joseamid (the deceased vessel captain) acted out of stupidity and this was beyond my control. I did not expect Joseamid would do this. I even offered to provide first aid to him (Agent Maceda)*."

At the PSR interview, Mr. Matos reiterated that he was repentant of his actions, especially because a life was lost. The defendant recognized how his actions affected the victim's family, as well as Maceda's life and the life of his children. He admitted the situation got out of control, as the death of the law enforcement officer was not supposed to happen, as the officer was doing his job. (ECF 966; PSR, paragraph 61, page 14)

Mr. Matos personally expresses his condolences to the deceased's family members for the loss of their loved one. This is a regretful moment he will have to live with the rest of Matos' life. Not a day goes by that he wishes to turn back the clock and have avoided this.

**THE OFFENSE AND MR. MATOS' BACKGROUND**

The Presentence Investigation Report (PSI) provides a great deal of information about Mr. Matos and these offenses, and the following points bare emphasis for supplemental discussion.

**a. Defendant's background**

Mr. Matos is a 27-year-old United States citizen born in Ponce, Puerto Rico. He obtained his high school diploma in as well as completed coursework in computer technology and baking.

His mother is Yahaira Santos-Castillo, a co-defendant in this case. As to Matos' upbringing, his parents separated when he was seven years old, with his father moving to Coamo, Puerto Rico, and his mother moved to Florida, leaving behind Matos to be raised by his paternal grandparents. Mato's father was not present nor involved in his life, while his mother stayed in contact by telephone. Matos recognized that his parents' absence affected him emotionally. This caused him to become rebellious, started acting out, and got involved in criminal activities as a

way of punishing his parents for leaving him and his siblings.  He later realized that his actions were harming him instead. The defendant said that after his grandfather died, he felt alone and in need of finding a way to financially assist his grandmother.

Matos lacked proper guidance throughout his teenage years.  After he reestablished his relationship with his mother, Matos did not have the best role model in his mother given her involvement in the instant case.

Matos current mindset is directed towards improving himself while serving his prison term in order to be able to provide for his child.  Matos is committed in becoming a different person as well as a law abiding and productive person making sure that his family will be able to lead a normal life and be provided for.

### b.  Prior drug usage

Mr. Matos sincerely stated his  drug usage, which is detailed in paragraphs 95 through 97 of the Presentence Report, admitting he started smoking marijuana at age 14 or 15 and was smoking daily until he was imprisoned. After his release from the juvenile institution at age 21, he started smoking marijuana again. At age 22, he obtained a license for medical marijuana for insomnia. He continued using marijuana until the instant arrest.  At age 21, he started using non-prescribed Percocet, at a rate of six to seven pills daily, and continued its use until the instant arrest.

We emphasize his drug use to remind the court of the harmful effects that narcotics have, which lead to the destruction of people's lives, and for the court to take into consideration that the acts which drove Mr. Matos to his current situation may have been in part motivated by drug abuse.

### B.  RELEVANT LEGAL PRINCIPLES

Defendant pleaded guilty to a crime and since he will receive his punishment on December 18, 2025, various legal principles regarding sentencing should be discussed here hoping that the Court will sentence him to his recommended sentence of a total of 300 months of imprisonment. A benefit that Mr. Matos enjoys is that this Honorable Court has a better understanding than most District Courts as to what a particular Defendant "deserves" in the way of sentencing and understands that in some situations the rigidity of the Sentencing Guidelines are overly draconian.

**Public risk**

As verified in the PSR, defendant admits that although he was raised by his grandparents, a good, united and religious family that taught him great values, his poor decisions resulted in bad choices mainly influenced by negative paternal role models, negative friendships and peer pressure especially when he began to live on his own in Mayaguez, Puerto Rico when he turned 18 years old and began a relationship with the mother of his child.

If this Honorable Court were to sentence Mr. Matos to a total of 300 months of imprisonment, he strongly affirms he would make the most of every minute. The BOP offers spectacular programs for individuals like Mr. Matos, and he guarantees that while incarcerated he would learn additional skills which would further make him a functioning and productive member of society when released.

1.  **Statutory Analysis**

As the Court is aware, 28 U.S.C. § 994 (k) and 18 U.S.C. § 3553 (a) are the two statutes it must rely upon in imposing sentence on a particular Defendant and this section will show why a 144-month imprisonment sentence satisfies the statutory requirements of sentencing.

a. **28 U.S.C. § 994 (k)** - Title 28 U.S.C. § 994 (k) removes the sympathy factor from sentencing, and was implemented to ensure that no defendant was incarcerated to put him in a

place where it was hoped that rehabilitation would occur. Here, the aspect of rehabilitation should be viewed as a place where Mr. Matos can receive some sort of education so that he can learn to be a productive member of society.   Section 994 (k)specifies specific traditional penological purposes for incarceration such as "rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."

The portion of § 994 (k) regarding "educational training" jumps out because prison can be an "opportunity" for Mr. Matos. Prison will not only offer him the opportunity to receive education and drug counseling, but he also will be able to learn a trade or apply those he already knows so that he can find gainful employment once he is released from the Bureau of Prisons. With the guidance of the programs offered by the BOP, Mr. Matos might be able to complete studies in available areas of his interest, since he has affirmed repeatedly that he does enjoy working and learning new skills. He intends to use the BOP to facilitate this goal.

The preamble of §3553 states "the court shall impose a sentence sufficient, but not greater than necessary," a sentence of 300 months is certainly a sufficient sentence, and under the circumstances it would not appear to be "greater than necessary." Regarding §3553 (a)(1), the undersigned has already devoted a great deal of time to discussing the nature and circumstances of Mr. Matos' offense as well as his history and characteristics. He should be punished for his offense because he broke the law, but this court should consider his particular issues. A 300-month imprisonment sentence reflects the seriousness of Matos' offense. It will deliver a strong message to him that unless he completely stays away from further crimes, he will end up spending many more years of his life in prison, particularly since if he commits another crime, he will have a higher criminal history. As the legislative history makes clear, § 3553 (a) "deliberately [does] not show a preference for one purpose of sentencing over another." S.Rep. No. 98-225, 98th Cong.,

1st Sess., at 77 (1983). In including several purposes of sentencing without favoring any of them, § 3553 (a) reflects what has been characterized as the inclusive theory of punishment. However, §3553 (a) allows for "different purposes ... [to] play greater or lesser roles in sentencing for different types of offenses committed by different types of defendants." S. Rep. No. 98-225, 98th Cong., 1st Sess., at 77 (1983). The intent of §3553(a) "is to recognize the four purposes that sentencing in general is designed to achieve, and to require that the judge consider what impact, if any, each particular purpose should have on the sentence in each case." Id.

Therefore, sentencing Mr. Matos to a total of 300 months of imprisonment would satisfy the requirements of 28 U.S.C. §994 (k) and 18 U.S.C. §3553 (a).

**CONCLUSION**

Mr. Matos respectfully requests that this Honorable Court:

1. Consider and accept the recommended sentence of a total of 300 months of imprisonment.

2. Recommend to the Bureau of Prisons that Mr. Ramirez serve his sentence at institutions which would be less expensive for his family to visit him and which offer programs which interest Mr. Matos, which are the Federal Correctional Complex in Coleman, Florida, or in the alternative, FPC Pensacola, or in the alternative, FCI Miami, in that order.

3.  That he be recommended to take courses in English as a second language and other trades that may benefit him.

**RESPECTFULLY SUBMITTED.**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties involved.

In San Juan, Puerto Rico this 11th day of December 2025.

*s/DAVID RAMOS-PAGAN*

DAVID RAMOS-PAGAN

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

parties of record.

*s/DAVID RAMOS-PAGAN*
DAVID RAMOS-PAGAN
USDC PR Bar No. 214701
Urb. El Valle, 372 Calle Yagrumo
Caguas, PR  00727-32334
Cel:  (787)423-3114
Email:  somar2000us@yahoo.com